**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| VANESSA DUNSTAN<br><br>                    Plaintiff,<br><br>          v.<br><br>NESPRESSO USA, INC.<br><br>                    Defendant. | Civil Case No.: 17-cv-714<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Vanessa Dunstan ("Plaintiff" or "Ms. Dunstan"), by and through her attorneys,
hereby alleges the following against Nespresso USA, Inc. ("Nespresso" or "Defendant"):

## INTRODUCTION

1.      Plaintiff brings this action against Defendant for discrimination on the basis of sex
in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*
("Title VII"), the New York State Human Rights Law, Executive Law § 296 ("NY CLS Exec §
296 *et seq.*"), and the Administrative Code of the City of New York § 8-107 ("NYC Admin.
Code § 8-107 *et seq.*") and for negligent supervision and retention and negligent infliction of
emotional distress, in violation of New York state laws.

2.      Plaintiff seeks medical expenses, out of pocket costs, lost wages, additional
compensatory damages, mental anguish and emotion distress damages, punitive damages,
reasonable attorneys' fees and costs, and other appropriate legal and equitable relief pursuant to
Title VII, Executive Law § 296, Administrative Code § 8-107 and under its New York state law
claims of negligent supervision and retention and negligent infliction of emotional distress.

1

## JURISDICTION AND VENUE

3.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391, as substantial parts of the events or omissions giving rise to claims in the Complaint occurred within the Southern District.

## CONDITIONS PRECEDENT

5.     Plaintiff timely filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC").

6.     The EEOC conducted its investigation and issued a Notice of Right to Sue on or about October 31, 2016.  A copy of the Notice of Right to Sue is attached hereto as Exhibit A. This complaint has been filed within 90 days of the receipt of said notice by Plaintiff.

## PARTIES

7.     Plaintiff, Ms. Dunstan, is a resident of New York State who was employed by Nespresso USA, Inc. from December 15, 2012 to March 13, 2015.

8.     Defendant, Nespresso, was incorporated in 1990 under the laws of the state of Delaware with its principal place of business at 24-01 44th Road, 12th Floor, Long Island City, New York 11101.

9.     At all relevant times stated herein, Plaintiff was an "employee" under both New York state and federal law.

10.     At all relevant times stated herein, Nespresso was an "employer" under both New York state and federal law.

2

## FACTS

11.     Nespresso is a manufacturer, distributor, and seller of coffee and coffee machines specifically designed for hotels, restaurants, and businesses.

12.     In addition to manufacturing, distributing, and selling coffee products, Nespresso operates a retail chain of boutique coffee bars.

13.     Plaintiff was employed at Nespresso's Hearst Boutique ("Hearst Boutique") located inside Sur La Table, a kitchen supply retailer, at Hearst Tower, 306 West 57th St., New York, New York 10019.

14.     Justin Zuzuro ("Mr. Zuzuro") was employed by Nespresso as a Boutique Specialist at Hearst Boutique.

15.     Upon information and belief, Mr. Zuzuro had previously worked a Nespresso boutique bar at the Short Hills Mall in Milburn, New Jersey.  He was transferred to the Hearst Boutique after an altercation with a female employee at the Short Hills Mall boutique.

16.     At all relevant times stated herein, Nespresso was on notice of Mr. Zuzuro's inappropriate and hostile conduct towards women.

17.     Throughout Ms. Dunstan's employment at the Hearst Boutique, Mr. Zuzuro made sexual, threatening, and disturbing comments about women to his female co-workers, including Ms. Dunstan.

18.     On one occasion, while in the presence of Ms. Dunstan, Mr. Zuzuro said that he was going to chop another female colleague into pieces and stuff her remains into his crawl space.

19.     On several occasions, Mr. Zururo told Ms. Dunstan that a sales associate at Sur La Table "needed to be eliminated" because she was "weak" and weak people "needed to be eliminated to cull the herd."

20.     On another occasion, after seeing an elderly woman walk by, Mr. Zuzuro told Ms. Dunstan that he was sexually attracted to women who were close to death either from injury or illness.

21.     Ms. Dunstan notified her colleagues at Hearst Boutique about Mr. Zuzuro's comments, but her colleagues were already aware of Mr. Zuzuro's inappropriate conduct and propensities.

22.     Upon information and belief, Mr. Zuzuro only made violent and disturbing comments to or in the presence of his female colleagues, and not his male colleagues.

23.     On December 19, 2014, Mr. Zuzuro assaulted Ms. Dunstan while they were both working at the Hearst Boutique.

24.     Ms. Dunstan touched Mr. Zururo's forearm to get his attention concerning a new coffee shipment, and Mr. Zururo reacted by grabbing Ms. Dunstan around the throat with one hand and on the shoulder with the other hand.  Mr. Zururo pushed Ms. Dunstan in this position back across the floor a few feet and continued to grip her neck for approximately ten (10) seconds before releasing her.  Upon releasing Ms. Dunstan, Mr. Zururo exclaimed, "You thought that was smart?  You think we're friends?  We're not friends!  Call whoever you need to call because I'm leaving!"  Mr. Zuzuro then left the store.

25.     This incident was witnessed by another employee at the Hearst Boutique.

26.     Ms. Dunstan reported the incident to the Assistant Manager of the Hearst Boutique, Thomas Backmon, who then informed the Manager of the Hearst Boutique, Digdem Serter.

27.     Ms. Serter called Ms. Dunstan and Ms. Dunstan described the incident to Ms. Serter.

28.     Concerned for her safety, Ms. Dunstan also reported the incident to the police and a police report was generated on December 24, 2014.

29.     The following day, Ms. Dunstan was contacted by personnel from Nestle[1] Human Resources, and she described the incident to them.

30.     During this conversation, Ms. Dunstan indicated that as a result of the incident she did not feel safe returning to work.

31.     The Human Resources representative explained several options to Ms. Dunstan, including returning to work, resigning, and taking unpaid leave under the Family Medical Leave Act ("FMLA").

32.     Ms. Dunstan elected to take the unpaid leave under the FMLA.

33.     During the week of March 9 to March 14, 2015, shortly before her FMLA leave ended and she was to return to work, Ms. Dunstan was contacted by Brenda Land, a "Leave Management Specialist" employed by Nestle, inquiring as to whether Ms. Dunstan would be returning to work at the Hearst Boutique.

34.     On or about this same time, Ms. Dunstan received a schedule for the Hearst Boutique that not only indicated that Mr. Zuzuro was scheduled to work at this location, but that

---

[1] Nespresso's parent company is Nestle SA.   Upon information and belief, the personnel that contacted Ms. Dunstan was from Nestle USA, Inc. ("Nestle"), a subsidiary of Nestle SA.  Nestle lists Nespresso has one of their brands on its website. *See* Nestle USA, http://www.nestleusa.com/brands/coffee (last visited Jan. 25, 2017).

he was scheduled to work alongside Ms. Dunstan on the same shifts.  A copy of the schedule of attached hereto as Exhibit B.[2]

35.     Ms. Dunstan was ready and willing to return to her position at the Hearst Boutique, so long as Mr. Zururo was no longer employed at that location.

36.     Because Ms. Dunstan had learned from the schedule that Mr. Zururo was not only still employed at the Hearst Boutique, but that she was expected to work alongside him, she did not feel safe returning to her position, and ultimately decided that she could not return to work.

37.     Ms. Dunstan has suffered and continues to suffer medical expenses, out of pocket costs, and lost wages as a direct result of this incident, not being able to return to work and Nespresso's conduct.

38.     Ms. Dunstan has suffered and continues to suffer mental anguish and emotional distress, including post-traumatic stress, anxiety, sleeplessness, panic attacks, and depression, for which she has sought and continues to seek medical treatment, as a direct result of this incident, not being able to return to work and Nespresso's conduct.

## COUNT ONE
### Discrimination in Violation of Title VII

39.     Plaintiff realleges and incorporates by reference all allegations in the paragraphs above as if fully set forth herein.

40.     By the acts and practices described above, including but not limited to creating a hostile work environment for Plaintiff because of her sex, Nespresso discriminated against Ms. Dunstan in the terms and conditions of her employment on the basis of her sex in violation of Title VII.

---

[2] While the schedule heading states "December 2014," this is only because the header is not regularly updated.  The dates written in the second column, along with the corresponding days of the week, clearly show that this schedule is for March 2015.

41.     Nespresso is liable as Ms. Dunstan's "employer" pursuant to Title VII.

42.     Nespresso also had knowledge of Mr. Zururo's conduct alleged in this complaint because of a prior incident with a female employee at another boutique location and the fact that Ms. Dunstan's colleagues were widely aware of his inappropriate conduct, but Nespresso took no disciplinary action or any affirmative steps to eradicate Mr. Zururo's sexually discriminatory behavior.  Thus, they should be held to have condoned the discriminatory acts of their employee, and may therefore be vicariously liable for the resulting harm.

43.     Nespresso further created a hostile work environment when they required Ms. Dunstan to work alongside her assailant, Mr. Zururo, after Ms. Dunstan had reported the assault to Nespresso and Nestle and with the full knowledge of the prior incident with a female employee at another boutique location and Mr. Zururo's inappropriate and hostile behavior towards Ms. Dunstan and other female employees at the Hearst Boutique location.

44.     As a result of the Defendant's discriminatory acts, Plaintiff has suffered and will continue to suffer injury and monetary damages, related to medical expenses, out of pocket costs and lost wages.

45.     As a result of the Defendant's discriminatory acts, Plaintiff has suffered and will continue to suffer injury and damages for mental anguish and emotional distress, including post-traumatic stress, anxiety, sleeplessness, panic attacks, and depression, for which she has sought and continues to seek medical treatment.

46.     Defendant acted intentionally and with malice and/or reckless indifference to Plaintiff's federally protected rights.

## COUNT TWO
## Discrimination in Violation of New York Executive Law § 296
## (NY CLS Exec § 296 *et seq.*)

47.     Plaintiff realleges and incorporates by reference all allegations in the paragraphs above as if fully set forth herein.

48.     By the acts and practices described above, including but not limited to creating a hostile work environment for Plaintiff because of her sex, Nespresso discriminated against Ms. Dunstan in the terms and conditions of her employment on the basis of her sex in violation of NY CLS Exec § 296 *et seq*.

49.     Nespresso is liable as Ms. Dunstan's "employer" pursuant to NY CLS Exec § 296 *et seq*.

50.     Nespresso had knowledge of Mr. Zururo's conduct alleged in this complaint because of a prior incident with a female employee at another boutique location and the fact that Ms. Dunstan's colleagues were widely aware of his inappropriate conduct, but Nespresso took no disciplinary action or any affirmative steps to eradicate Mr. Zururo's sexually discriminatory behavior.  Thus, they should be held to have condoned the discriminatory acts of their employee, and may therefore be vicariously liable for the resulting harm.

51.     Nespresso further created a hostile work environment when they required Ms. Dunstan to work alongside her assailant, Mr. Zururo, after Ms. Dunstan had reported the assault to Nespresso and Nestle and with the full knowledge of the prior incident with a female employee at another boutique location and Mr. Zururo's inappropriate and hostile behavior towards Ms. Dunstan and other female employees at the Hearst Boutique location.

52.     As a result of the Defendant's discriminatory acts, Plaintiff has suffered and will continue to suffer injury and monetary damages, related to medical expenses, out of pocket costs and lost wages.

53.     As a result of the Defendant's discriminatory acts, Plaintiff has suffered and will continue to suffer injury and damages for mental anguish and emotional distress, including post-traumatic stress, anxiety, sleeplessness, panic attacks, and depression, for which she has sought and continues to seek medical treatment.

54.     Defendant acted intentionally and with malice and/or reckless indifference to Plaintiff's statutory rights.

**COUNT THREE**
**Discrimination in Violation of New York City Administrative Code § 8-107**
**(NYC Admin. Code § 8-107 *et seq*.)**

55.     Plaintiff realleges and incorporates by reference all allegations in the paragraphs above as if fully set forth herein.

56.     By the acts and practices described above, including but not limited to creating a hostile work environment for plaintiff because of her sex, Nespresso discriminated against Ms. Dunstan in the terms and conditions of her employment on the basis of her sex in violation of NYC Admin. Code § 8-107 *et seq*.

57.     Nespresso is liable as Ms. Dunstan's "employer" pursuant to NYC Admin. Code § 8-107 *et seq*.

58.     Nespresso had knowledge of Mr. Zururo's conduct alleged in this complaint because of a prior incident with a female employee at another boutique location and the fact that Ms. Dunstan's colleagues were widely aware of his inappropriate conduct, but Nespresso took no disciplinary action or any affirmative steps to eradicate Mr. Zururo's sexually discriminatory

behavior.  Thus, they should be held to have condoned the discriminatory acts of their employee, and may therefore be vicariously liable for the resulting harm.

59.     Nespresso further created a hostile work environment when they required Ms. Dunstan to work alongside her assailant, Mr. Zururo, after Ms. Dunstan had reported the assault to Nespresso and Nestle and with the full knowledge of the prior incident with a female employee at another boutique location and Mr. Zururo's inappropriate and hostile behavior towards Ms. Dunstan and other female employees at the Hearst Boutique location.

60.     As a result of the Defendant's discriminatory acts, Plaintiff has suffered and will continue to suffer injury and monetary damages, related to medical expenses, out of pocket costs and lost wages.

61.     As a result of the Defendant's discriminatory acts, Plaintiff has suffered and will continue to suffer injury and damages for mental anguish and emotional distress, including post-traumatic stress, anxiety, sleeplessness, panic attacks, and depression, for which she has sought and continues to seek medical treatment.

62.     Defendant acted intentionally and with malice and/or reckless indifference to Plaintiff's statutory rights.

## COUNT FOUR
### Negligent Supervision and Retention

63.     Plaintiff realleges and incorporates by reference all allegations in the paragraphs above as if fully set forth herein.

64.     At all relevant times, Nespresso had a duty to supervise and retain its employees, including Mr. Zuzuro, to ensure that they performed their job tasks while engaging in appropriate workplace conduct and behavior that was in compliance with federal and state law.

65.     At all relevant times, Nespresso had a duty to supervise and retain its employees, including Mr. Zuzuro, to ensure that there was a safe work environment for all its employees.

66.     Nespresso breached those duties when it failed to appropriately discipline and/or terminate the employment of Mr. Zururo after he was involved in an incident with a female employee at the Short Hills Mall Boutique, after they had knowledge of Mr. Zuzuro's inappropriate and hostile comments made to and in the presence of female employees, including Ms. Dunstan, at the Hearst Boutique, and after his assault of Ms. Dunstan at the Hearst Boutique.

67.     At all relevant times stated herein, Nespresso knew of Mr. Zururo's hostile conduct and behavior towards women.

68.     At all relevant times stated herein, Nespresso was negligent and reckless in their supervision and retention of Mr. Zuzuro.

69.     As a result of Defendant's negligent and/or reckless supervision and retention of Mr. Zuzuro, Plaintiff has suffered and will continue to suffer injury and monetary damages, related to medical expenses, out of pocket costs and lost wages.

70.     As a result of Defendant's negligent and/or reckless supervision and retention of Mr. Zuzuro, Plaintiff has suffered and will continue to suffer injury and damages for mental anguish and emotional distress, including post-traumatic stress, anxiety, sleeplessness, panic attacks, and depression, for which she has sought and continues to seek medical treatment.

## COUNT FIVE
### Negligent Infliction of Emotional Distress

71.     Plaintiff realleges and incorporates by reference all allegations in the paragraphs above as if fully set forth herein.

72.     As a result of its actions, Nespresso negligently, carelessly, and recklessly inflicted great and lasting emotional distress upon Ms. Dunstan.

73.    As a result of Defendant's actions, Ms. Dunstan was put in fear of her health and safety, and was caused post-traumatic stress, anxiety, sleeplessness, panic attacks, and depression for which she has sought and continues to seek medical treatment.

74.    Plaintiff has suffered and will continue to suffer mental anguish and emotional distress as a result of Nespresso's negligently, carelessly, and recklessly conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

A.    Declaring the acts and practices complained of herein are in violation of Title VII, Executive Law § 296, and Administrative Code § 8-107;

B.    Awarding Plaintiff medical expenses, out of pocket costs, lost wages, and other compensatory damages, in amounts to be determined at trial;

C.    Awarding Plaintiff damages for mental anguish and emotional distress, in an amount to be determined at trial;

D.    Awarding Plaintiff punitive damages for Defendant's conduct, in an amount to be determined at trial;

E.    Awarding Plaintiff such interest as is allowed by law;

F.    Awarding Plaintiff reasonable attorneys' fees and costs incurred in this action; and

G.    Granting such other and further relief as the Court deems just, equitable and proper.

## DEMAND FOR A JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by this complaint.

Dated: January 30, 2017

**FARUQI & FARUQI, LLP**

By: */s/ Innessa S. Melamed*

Innessa S. Melamed, Esq.
685 Third Ave., 26th Floor
New York, New York 10017
Telephone: (212) 983-9330
Facsimile: (212) 983-9331
Email: imelamed@faruqilaw.com

Adam R. Gonnelli, Esq.
**THE SULTZER LAW GROUP, P.C.**
280 Highway 35, Suite 304
Red Bank, NJ 07701
Telephone:  (732) 741-4290
Facsimile:  (888) 749-7747
Email: gonnellia@thesultzerlawgroup.com

*Attorneys for Plaintiff*